**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Crim. No. 21-515 (ZNQ) |
| **DANIEL MURPHY,** | **OPINION** |
| Defendant. | |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon Defendant Daniel Murphy's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF No. 44.) Defendant filed a Brief in Support of the Motion ("Moving Br.," ECF No. 44-1), and the Government filed an opposition ("Opp'n Br.," ECF No. 49.) Defendant submitted a reply. ("Reply Br.," ECF No. 50.)

  The Court has considered the parties' submissions and decides this matter without a hearing. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009). For the reasons discussed below, the Court will **DENY** Defendant's Motion.

**I. BACKGROUND AND PROCEDURAL HISTORY**

  On June 30, 2021, Defendant pled guilty to a two-count information charging him with receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) (Count One); and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5) and (b)(2) (Count Two). (ECF No. 25.) On February 22, 2022, Defendant was sentenced to 72 months'

1

imprisonment followed by five years of supervised release. (ECF No. 38.) Defendant's anticipated release date is May 22, 2027.

On October 13, 2023, Defendant submitted an internal request with the warden of FCI-Loretto for compassionate release and home confinement based on his poor medical and physical condition. (ECF No. 44, Ex. A.) The warden denied Defendant's request, concluding that Defendant was "able to perform activities of daily living" and that his medical records did not indicate whether he was "diagnosed with an incurable disease," "a cognitive deficit which affects [his] mental capacity for function," or that he was "confined to a bed or a chair [for] more than 50% of waking hours." (*Id.*, Ex. B.) Defendant filed the instant Motion on April 12, 2024. On November 20, 2024, the Court granted Defendant's Motion to Seal Defendant's medical records and other documents. (ECF Nos. 48, 52.)

## II. LEGAL STANDARD

"Once a term of imprisonment has been imposed, a district court has the authority to modify it only in limited circumstances" prescribed by statute. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (discussing 18 U.S.C. § 3582(c)). The First Step Act allows district courts to grant compassionate release and "reduce the term of imprisonment," if, "after considering the factors set forth in 18 U.S.C. § 3553(a)," the court finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *United States v. Pawlowski*, 967 F.3d 327, 329–30 (3d Cir. 2020). "Accordingly, a court may grant a defendant's motion if (1) "extraordinary and compelling reasons" exist, (2) a reduction aligns with relevant Sentencing Commission policy statements, and (3) the § 3553(a) factors support a reduction." *United States*

*v. Derentz*, 608 F. Supp. 3d 189 (E.D. Pa. 2022) (quoting *United States v. Andrews*, 12 F.4th 255, 259 n.4 (3d Cir. 2021)).

The United States Sentencing Commission promulgated a policy statement (the "Policy Statement") specifying certain qualifying "[e]xtraordinary and compelling" circumstances." *See* U.S.S.G. § 1B 1.13(b).[1] Three of which are relevant here: (1) "[t]he defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the . . . correctional facility and from which he . . . is not expected to recover"; (2) "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which defendant is at risk of serious deterioration in health or death"; and (3) "[o]ther [r]easons . . . [t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described . . . are similar in gravity." *See* U.S.S.G. § 1B 1.13(b)(1)(B) and (C), (5).

### III. PARTIES' ARGUMENTS

Defendant argues that "extraordinary and compelling reasons" warrant a reduction to his sentence based on his health complications and the provision of inadequate medical care by the Bureau of Prisons (BOP). (Moving Br. at 14.) Defendant additionally contends that the § 3553(a) factors support the requested relief because he poses no danger to the public and a reduction will ensure he receives necessary medical treatment. (*Id.* at 21.)

The Motion identifies a long list of medical conditions that Defendant suffered before entering BOP custody, including obstructive sleep apnea ("OSA"), obesity, high cholesterol, hyperthyroidism, Type 2 diabetes mellitus, pre-diabetes, generalized anxiety disorder, depression,

---

[1] The Court is not bound to the examples of extraordinary and compelling reasons for compassionate release outlined in the Policy Statement, but the Court may use them to guide its interpretation. *Andrews*, 12 F.4th at 259 n.4.

3

and an enlarged prostate. (Moving Br. at 3–9.) Defendant contends that these conditions have steadily worsened during his incarceration due to his inability to effectively use a Continuous Positive Airway Pressure ("CPAP") machine. Defendant claims that FCI-Loretto will not permit "new working supplies that ensure efficacious use of the CPAP machine despite [Defendant's] repeated requests." (*Id.* at 4.)

In support of the Motion, Defendant provided an expert analysis of Defendant's OSA diagnosis which found that Defendant's "OSA is among the most severe" and puts Defendant at increased risk of experiencing other health consequences if his OSA condition is not treated properly. (ECF No. 44, Ex. E.) In particular, the expert concluded that Defendant is at increased risk of developing "cardiovascular and cerebrovascular complications" as well as "neuropsychiatric dysfunction" such as depression and psychosis. (*Id.* at 9, 17.) Lastly, according to the expert, the effectiveness of CPAP therapy requires "both appropriate equipment and diligent maintenance" and Defendant alleges in a Declaration that his CPAP's face mask has loosened to the point where it is ill-fitting, and he has experienced numbness in his fingers. (Ex. C, ¶ 8.)

The Government argues that the Motion should be denied because Defendant's conditions "are well-managed in BOP custody" and that even if Defendant showed that he was suffering from a serious medical condition, consideration of the § 3553(a) factors establishes that early release is inappropriate. (Opp'n Br. at 6, 9.) First, the Government contends that Defendant "does not present with a terminal illness" or a "serious physical or medical condition" which diminishes his ability to provide self-care," and has not established that he is suffering from a condition that "requires long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death." (*Id.* at 7.)

4

The Government further claims that Defendant's OSA condition "is not a proper issue for compassionate release at this time" because "the BOP medical records do not reflect that . . . Defendant has made any requests for parts or supplies for his CPAP machine." (*Id.*) The Government posits that Defendant's objections to the quality of care provided by the BOP can be addressed through the administrative process which Defendant has not "availed himself of." (*Id.*) Lastly, the Government refutes Defendant's position that he is at an elevated risk of becoming seriously ill from COVID-19 as "not a basis for relief." (*Id.* at 8.)

In his Reply, Defendant takes issue with the Government's position that he has not requested supplies for his CPAP machine, citing to internal communications between Defendant and FCI-Loretto's "Health Services." (Reply Br. at 4, Ex. A.) Defendant further contends that he was told by BOP staff that the institution could not order new parts or supplies during "any Continued Resolution." (Ex. C, ¶ 10.)

## IV. DISCUSSION

The Government does not dispute that Defendant sought compassionate release from FCI-Loretto's warden, which was denied, and thus has exhausted his administrative remedies within the BOP before filing this motion. The Court will therefore consider the merits of Defendant's Motion.[2]

### A. Extraordinary and Compelling Reasons

As noted, medical conditions may constitute "extraordinary and compelling reasons" to grant a motion for compassionate release. Defendant argues that the combination of his pre-existing medical conditions as well as BOP's failure to provide medical care present as such

---

[2] "The exhaustion requirement is met if 'the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf' or 30 days have passed since the warden received the defendant's request for compassionate release." *United States v. Derentz*, 608 F. Supp. 3d 189, 192 (E.D. Pa. 2022) (citing 18 U.S.C. § 3582(c)(1)(A)).

reasons. Other courts have agreed. *See e.g., United States v. Kohler*, Cr. No. 15-425, 2022 WL 780951, at *4 (M.D. Fla. Mar. 15, 2022) (granting compassionate release based on BOP failure to adequately treat defendant's heart condition and other serious medical issues); *United States v. Gaulden*, Cr. No. 499-001-1, 2022 WL 2820109, at *4 (S.D. Ga. July 19, 2022) (granting compassionate release due to BOP's failure to treat defendant's serious medical condition of sarcoidosis); *United States v. Smith*, Cr. No. 9-187, 2020 WL 4047485, at *5 (W.D. Pa. July 20, 2020) (finding extraordinary and compelling reasons based on defendant's asthma, exemplary record while incarcerated, educational and rehabilitation efforts, and the thwarting of participation in the resident addiction program); *United States v. Tran*, Cr. No. 08-00197, 2020 WL 1820520, at 2* (C.D. Cal. April 10, 2020) (finding extraordinary and compelling reasons where defendant suffered from asthma and had not received an inhaler from the BOP which made him vulnerable to severe illness from COVID-19).

For the purposes of this decision, the Court will accept Defendant's claim that his medical conditions may constitute extraordinary and compelling reasons under the Policy Statement and therefore proceeds with an analysis of the § 3553(a) factors on the merits.

**B.    Section 3553(a) Factors**

The Court is not persuaded that the § 3553(a) factors warrant a reduction in Defendant's term of imprisonment. These factors include:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further hicrimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty

>of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020) (quoting *United States v. Davies*, 746 Fed App'x 86, 88–89 (3d Cir. 2018)).

Here, the Court agrees with the Government that consideration of these factors weigh against release. Setting aside the "history and characteristics of the defendant," the remaining factors weigh heavily against a reduction. Although non-violent, Defendant's conduct in this case was especially heinous: he received and was in possession of 18,438 files depicting child pornography, some of which portrayed "sadistic and masochistic conduct, depictions of violence, and sexual abuse of infants and toddlers." (ECF No. 34.) As the Honorable Judge Peter G. Sheridan, U.S.D.J. (ret.) described at Defendant's sentencing, "the crime here is very severe, . . . harsh . . . and depraved." (Sent. Tr. at 40:10-11.) Judge Sheridan further explained that this was not "a one-time deal." (*Id.* at 38:20.) Rather, Defendant had begun "looking at child porn[ography] when he was in college, gave it up for a while, then he went back to it." (*Id.* at 38:20-23.) Accordingly, Defendant was engaged in this conduct for "a long period of time." (*Id.* at 38:24-25.)

Judge Sheridan also determined that a 72-month sentence was needed to serve a general deterrence purpose because Defendant is said to have perceived his offenses as "low risk" and the Court sought to make clear to other potential offenders that these offenses "are not low-risk activities." (*Id.* at 41:15-21.) Given the nature and circumstances of Defendant's offenses, the Court is mindful of the need for the sentence imposed to reflect its seriousness, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by Defendant. 18 U.S.C. § 3553(a)(2)(A)–(C).

Further, as for the kinds of sentence and the sentencing range established for Defendant's crimes, the sentencing guideline range for Defendant's convictions was 78 to 97 months with a statutory mandatory minimum of 60 months for receipt of child pornography. *See* 18 U.S.C. 2252A (a)(2) and (b)(1). (ECF No. 44, Ex-2(G), "Sent. Tr.") In sentencing Defendant only 32 months ago, the Court considered each of the § 3553(a) factors and imposed a slight variance from the within-Guidelines sentence of 78 months down to 72 months due to Defendant's devotion to his mother and three siblings. (Sent. Tr. at 42:3-6.)

In contrast to some of the cases in which courts have granted compassionate release for individuals convicted of crimes involving child pornography, Defendant has not even served the mandatory statutory minimum of his sentence to date. *See Derentz*, 608 F. Supp. at 196 (granting compassionate release to a defendant convicted of distribution of child pornography where the defendant had served the mandatory minimum sentence for his conviction and the BOP's failure to provide adequate medical care resulted in the defendant becoming partially blind). The Court therefore believes that the present sentence is needed to provide just punishment and deterrence. *See e.g., Pawlowski*, 967 F.3d 327, 330–31 (3d Cir. 2020) (holding that a district court does not abuse its discretion in denying compassionate release based, in part, on the amount of time remaining to be served in the sentence because "the time remaining in that sentence may . . . inform whether immediate release would be consistent with [the 3553(a) factors]"); *United States v. Doe*, 833 F. App'x 366 (3d Cir. 2020) (affirming the denial of compassionate release based on health conditions and concluding that the district court did not abuse its discretion "in assessing the seriousness of Doe's offense of conviction or his criminal history"); *United States v. Bullock*, 833 F. App'x 934, 935 (3d Cir. 2020) (affirming the denial of compassionate release and deeming it permissible for the district court to consider the time remaining on the defendant's sentence).

Accordingly, the Court finds that the § 3553(a) factors weigh against Defendant's early release and will therefore **DENY** Defendant's Motion. The Court recognizes, and does not take lightly, Defendant's need for access to a well-functioning CPAP machine. This can, and should, be provided to Defendant by the BOP.

## V. CONCLUSION

For the reasons stated above, the Court will **DENY** Defendant's Motion for Compassionate Release. An appropriate Order will follow.

Date: **December 3, 2024**

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE